YARRUT, Judge.
Irrespective of the parties in the District Court, the only parties involved on this *796 appeal are Tom Williams. Construction Co',, Inc., referred to herein as the Construction Co., its insurer, Trinity Universal Insurance Company, referred to herein as the Insurer, and Roy-fiJ. Berggren, the owner of the dwelling built for him by the Construction Co.,' who will be referred to herein as Berggren.
Berggren seek's recovery of approximately $12,000.00 from the Construction Co. and Insurer, who bonded the construction contract, the cost to repair defective work in the design and construction, namely:
1. Inadequacy of-design of the foundation ;
2. Cracking and sinkage of the foun-ation slab;
3. Cracks in the terrazzo floor caused by cracking and settlement of the ■ foundation.
From a judgment dismissing Berggren’s suit, with judgment in favor of the Construction Co. and Insurer, Berggren has taken this appeal. The undisputed facts are:
In August, 1959, Berggren purchased a lot of ground from the Construction Co. located in Harlem Subdivision, Jefferson Parish, on which the Construction Co. later agreed to build a dwelling for Berg-gren, at a cost $24,640.00, for both lot and dwelling. Three months before the building contract was signed, the Construction Co. submitted to Berggren a set of plans and specifications for the proposed dwelling. Berggren made application to a local building and loan association to finance the purchase and construction, in connection with which Berggren submitted to it the contemplated plans and specifications. The plans were approved by the Association’s architect and building expert, following which a contract was executed for the construction at a cost of $18,640.00, to be financed by the Association.
During construction the work was inspected at various stages by the Association’s architect and, in January of 1960, was accepted by Berggren upon' recommendation of the Association’s architect that it had been completed in accordance with .the plans and specifications. In the latter part of April, 1960, Berggren complained that several hairline cracks developed in the terrazzo flooring.
At the trial, without any dissent, all experts, engineers and architects who testified agreed the building was constructed in complete- conformity with the plans and specifications, thus leaving as the sole issue the adequacy of the design of the foundation as- relates to the soil condition, later determined to exist, which Berggren contends was the cause of the sinking and the cracking of the slab and terrazzo flooring.
In behalf of Berggren a soil expert testified that, two years after the building was constructed, he performed soil tests and found the soil was susceptible of settlement of 124-2J4 inches under certain conditions.
Using the above soil report as a basis, a foundation engineer for Berggren testified the dwelling was encountering a foundation failure due to said soil conditions and the inadequacy of support in the slab foundation. Under cross-examination this witness admitted there existed no physical evidence of cracks in the slab, and that his conclusion-as to the foundation failure was based purely on theory.
An architect for Berggren admitted that he could give no opinion on matters pertaining to structural engineering but that, in his opinion as an architect, based on-the experience of having prepared drawings for seven dwellings in the past seven years, the slab drawings did not provide for adequate support and the cracked floors were aesthetically unacceptable.
The lending Association’s architect and building inspector testified he had vast experience in the field of residential construction and found the plans and specifications were prepared according to the ac *797 cepted practices for buildings of that nature and cost,.a great number of which were constructed by developers in the area involved; that he personally inspected the job site before the slab was poured, found everything to be in order, and inspected the work periodically as it progressed, and that he recommended acceptance of the dwelling upon completion of the contract.
An expert concrete construction contractor testified that’, during the past ten years, he had installed more than 3000 foundation slabs for dwellings in this area, most of which were constructed in the manner and according to plans similar to those involved here, including the manner in which the terrazzo tile was installed; that he checked the plans for the foundation, and when he first inspected the premises found it difficult to see the cracks in the terrazzo; but, after they were pointed out to him, he concluded the cracks were not at all uncommon in such construction, and that the thickness of the terrazzo and temperature changes in all probability were the causes.
A foundation expert, who listed a number of major construction projects in the area on which he had worked, testified he checked the plans and specifications, and inspected the building on January 25, 1963. In his opinion, the building was constructed in accordance with the plans and specifications, was structurally sound and similar in design to many similar dwellings in the New Orleans area. He observed certain hairline cracks in the terrazzo flooring and was of the opinion they were predominantly shrinkage cracks; he found no evidence indicating a structural failure; and the plans and specifications conformed to accepted usage in the New Orleans area.
All the experts, without dissent, also agreed that it is characteristic of cement to crack, regardless of foundation, and one cited the Civil District Court Building, where a number of cracks in the terrazzo floor exist.
A significant remark on the cracking of concrete was made by one of the experts for Berggren, when asked about cracking of concrete. He said, “steel rusts, wood rots and concrete cracks.”
We must conclude that Berggren has failed to establish faulty or poor workmanship in thei construction of this dwelling ; or that the plans were inadequate; or that the building is suffering a foundation failure; or that the cracking of the terrazzo was due to anything but natural shrinkage.
Furthermore, there is nothing' in this record to prove that the Construction Co., knew, or should have known, of any purported soil problem before or during the construction of this dwelling. The evidence to establish the susceptibility of this soil to shrinkage was only obtained by Berggren after completion and acceptance of the dwelling.
It is true the Construction Co. constructed other buildings in the same area; but no evidence was introduced that foundation or soil problems were encountered either before, during or after their construction which could impute to it knowledge of a soil problem on the Berggren building site.
Under Louisiana Jurisprudence a contractor is not responsible for loss caused by soil conditions after completion of the structure and delivery and acceptance thereof by the owner. Article 2762 LSA-Revised Civil Code.
In Brasher v. City of Alexandria, 215 La. 887, 41 So.2d 819, our Supreme Court in passing on the application of Article 2762 LSA-Revised Civil Code, where a soil problem was encountered, concluded:
“ * * * that Article 2762 applies, and can only apply, where the building or other structure has been completed and delivered to the owner, and in such case the liability of the undertaker is restricted to a loss resulting from defective workmanship and does not ex *798 tend to a loss caused by soil conditions. See Comment, 7 La.L.Rev. 564, 569.”
A. M. Blodgett Const. Co. v. Cheney Lumber Co., 129 La. 1057, 57 So. 369; Powell v. Markham, 18 La.Ann. 581; Fremont v. Harris, 9 Rob. 23.
We agree with the District Judge that the evidence does not establish any fault on the part of the Construction Co, but disagree with his assessment of costs in either court against the Construction Co. or the Insurer. The judgment is amended to relieve these two parties of any taxable court costs, and to permit them in proper proceedings in the District Court to prove and recover the taxable costs expended by them, including expert fees.
Judgment amended, and as amended affirmed, and case remanded solely to permit the appellees to prove their taxable costs as above stated.